Filed 7/14/22  P. v. Romero CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079837 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE214186) |
| RICHARD ROMERO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Roderick W. Shelton, Judge.  Affirmed.

Waldemar D. Halka, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, and Steve Oetting and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

Richard Romero appeals from an order summarily denying his petition for relief from a 2002 attempted murder conviction under former Penal Code

section 1170.95 (now § 1172.6).[1]  We conclude that even under the recent amendment to former section 1170.95 expanding its scope to some attempted murder convictions (Sen. Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill No. 775)), Romero is legally ineligible for relief because he was not convicted of "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a).)  Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

As do the parties, we take the facts from our unpublished 2004 decision affirming Romero's conviction for attempted murder.  (*People v. Romero* (Mar. 29, 2004, D041395) [nonpub. opn.], review denied June 9, 2004, S124644 (*Romero*).)  (See *People v. Lopez* (2022) 78 Cal.App.5th 1, 13 ["The

---

[1]  All statutory references are to the Penal Code unless otherwise specified.  Effective June 30, 2022, section 1170.95 was recodified without substantive change in section 1172.6, pursuant to Assembly Bill No. 200 (2021-2022 Reg. Sess.) (Assembly Bill No. 200).  (See Stats. 2022, ch. 58, § 10.)  We refer to the current codification throughout this opinion, unless otherwise indicated.

2

record of conviction may include the underlying facts as presented in an appellate opinion"].)[2]

On the night of February 7, 2001, Romero got into a fight with Steven Courtney at a bar. After they were kicked out of the bar, the fight continued in the parking lot. When the fight ended, Romero's face was bleeding and his shirt was torn. Romero threatened to kill Courtney. Courtney left the scene. (*Romero*, *supra*, D041395.)

Later that night, Romero made some calls to find out where Courtney lived. He changed into dark clothes and a beanie, and asked Luis Arechiga to drive him because he was too drunk to drive. Romero directed Arechiga to Courtney's house and told him to stop near a parked car in which Courtney was sitting as a passenger. Romero got out of the car, walked up to the passenger window of the other car, and shot Courtney five times with a revolver in the neck, chest, arm, and lower back. Romero then got back into the car and told Arechiga to flee the scene. (*Romero*, *supra*, D041395.)

Around 2:55 a.m., a deputy sheriff pursued their car at high speed until it came to a stop at a dead-end street. Romero jumped out of the passenger

---

[2] In *People v. Flores* (2022) 76 Cal.App.5th 974, the court concluded that "the factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing [under section 1172.6]." (*Id*. at p. 988; § 1172.6, subd. (d)(3) ["The court may also consider *the procedural history* of the case recited in any prior appellate opinion."], italics added; see also *People v. Clements* (2022) 75 Cal.App.5th 276, 292 [holding based on the "specificity" of subdivision (d)(3) that "the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing"].) In this case, however, there was no evidentiary hearing, and both parties have relied on our prior opinion in summarizing the factual background of the underlying crime.

side and fled on foot. The deputy arrested Arechiga, the driver. (*Romero, supra*, D041395.)

In the meantime, sheriff's deputies who had responded to the scene of the shooting found Courtney on the ground outside a car, severely injured, unconscious, and bleeding from numerous bullet wounds. Paramedics transported Courtney to a hospital, where he remained in a coma for several months. (*Romero, supra*, D041395.)

In their investigation, the police discovered that the car driven by Arechiga belonged to Romero. They found gunshot residue on the exterior passenger door handle of the car and a handgun lying about 200 yards from the car in the direction Romero had fled. The bullet casings and fragments recovered from the scene of the shooting were consistent with the handgun found near Romero's car. (*Romero, supra*, D041395.)

Romero presented an alibi defense. (*Romero, supra*, D041395.)

A jury convicted Romero of willful, deliberate, and premeditated attempted murder (§§ 664, 187, subd. (a), 189), and assault with a firearm (§ 245, subd. (a)(2)). For both offenses, the jury found it to be true that Romero personally used a firearm (§ 12022.5, subd. (a)(1)), intentionally and personally discharged a firearm causing great bodily injury (§12022.53, subd. (d)), and personally inflicted great bodily injury upon Courtney (§ 12022.7, subd. (a)).

On appeal, we reversed the section 12022.53 firearm enhancement for the assault, but otherwise affirmed the judgment.

On February 24, 2020, Romero filed a pro per petition for resentencing under former section 1170.95 and requested appointment of counsel. Nearly two years later, the trial court discovered that the petition had not yet been adjudicated. On November 30, 2021, the court issued an order summarily

4

denying the petition without appointing counsel for Romero. The court found that Romero had not filed a facially sufficient petition warranting appointment of counsel. The court reasoned that Romero was not eligible for relief under former section 1170.95 because his petition alleged he was convicted of first degree attempted murder, and he had "not shown that he was convicted of first or second degree murder under either the felony murder rule or natural and probable consequences doctrine."

Effective January 1, 2022, Senate Bill No. 775 amended former section 1170.95 to expand its coverage to individuals convicted of "attempted murder under the natural and probable consequences doctrine." (former § 1170.95, subd. (a), as amended by Stats. 2021, ch. 551, § 2.) As subsequently renumbered by Assembly Bill No. 200, all of the same provisions of former section 1170.95 were carried forward without change in section 1172.6.

## DISCUSSION

Romero argues that (1) Senate Bill No. 775 applies retroactively to his section 1172.6 petition under *In re Estrada* (1965) 63 Cal.2d 740; (2) as amended by Senate Bill No. 775, section 1172.6 applies to his attempted murder conviction because the jury instructions permitted the jury to convict him under an imputed malice theory; and (3) the trial court's order should be reversed and remanded with directions to appoint counsel and reconsider his petition under section 1172.6 as amended by Senate Bill No. 775.

The People do not dispute that Senate Bill No. 775 applies retroactively in pending appeals from orders denying relief under section 1172.6. However, the People contend that Romero is legally ineligible for relief under section 1172.6 as amended, because he was not convicted of "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a).)

5

Former section 1170.95 was originally enacted as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437). Senate Bill No. 1437 eliminated aiding and abetting liability for murder based on the natural and probable consequences doctrine and limited the scope of the felony-murder rule. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); §§ 188, subd. (a)(3), 189, subd. (e). It also amended section 188 to require that, when the felony-murder rule does not apply, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

As part of Senate Bill No. 1437, the Legislature enacted former section 1170.95 to establish a new petition procedure for vacating murder convictions of defendants who could not have been convicted under the new law, and resentencing them on any remaining counts. (Former § 1170.95, subd. (a).) The statute also includes a provision for appointment of counsel in such proceedings. (§ 1172.6, subd. (b)(3).)

In *Lewis*, the Supreme Court held that section 1172.6 petitioners are entitled to appointment of counsel upon the filing of a facially sufficient petition. (*Lewis, supra*, 11 Cal.5th at p. 957.) Only *after* the appointment of counsel and opportunity for briefing may the court consider the actual record of conviction to determine whether the petitioner is entitled to relief. (*Ibid*.)

Effective January 1, 2022, Senate Bill No. 775 amended former section 1170.95 to expand its scope to those convicted of "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a).) The bill also codified the holding of *Lewis* by adding the following provision: "Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if the petitioner has requested counsel,

6

the court shall appoint counsel to represent the petitioner." (§ 1172.6, subd. (b)(3).)

In this case, Romero filed a facially sufficient petition with all the information required by former section 1170.95, subdivision (b), now renumbered as section 1172.6, subdivision (b). Romero used a preprinted form and checked boxes stating that he had been charged and convicted of murder pursuant to the felony-murder rule or the natural and probable consequences doctrine, and that he could not now be convicted of murder under these theories. He also checked a separate box stating that he had been convicted of first degree attempted murder under the natural and probable consequences doctrine or the felony-murder rule, and that he could not now be convicted under these theories. Romero's petition included the superior court case number and year of conviction. He requested appointment of counsel and signed the form under penalty of perjury.

Regardless of its accuracy, Romero's petition was in proper form, it contained the required information, and it was facially sufficient to allege that he was convicted of a crime falling under the provisions of section 1172.6 (both before and after the enactment of Sen. Bill No. 775). Accordingly, Romero was entitled to appointment of counsel as requested. (*Lewis*, *supra*, 11 Cal.5th at p. 957; § 1172.6, subd. (b)(3).) "[P]etitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition." (*Lewis*, at p. 963.)

Nevertheless, a trial court's erroneous failure to appoint counsel for a section 1172.6 petitioner is subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Lewis*, *supra*, 11 Cal.5th at pp. 972-974.) On appeal, the petitioner has the burden of showing it is reasonably probable that if he or she had been afforded assistance of counsel, his or her petition

7

would not have been summarily denied without an evidentiary hearing. (*Id.* at p. 974.)

Romero cannot demonstrate prejudice under this standard. Contrary to the allegations of his petition, the actual record of his conviction demonstrates that Romero was only convicted of attempted murder, not murder *and* attempted murder. Thus, Romero would be eligible for relief under section 1172.6 as amended by Senate Bill No. 775 only if his attempted murder conviction was based on the "natural and probable consequences doctrine." (§ 1172.6, subd. (a).) "Section [1172.6] applies by its terms only to attempted murders based on the natural and probable consequences doctrine." (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*).)

Yet the record of conviction affirmatively establishes that Romero was *not* convicted of attempted murder based on the natural and probable consequences doctrine. At Romero's trial, the court gave CALJIC Nos. 3.00 and 3.01 defining principals and aiding and abetting, as well as CALJIC Nos. 8.66 and 8.67 on willful, deliberate, and premeditated attempted murder. The court did *not* give CALJIC No. 3.02 or any other jury instruction on aider and abettor liability for natural and probable consequences. Because the jury instructions did not permit the jury to convict Romero of "attempted murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)), he is legally ineligible for relief under section 1172.6. (*Coley, supra,* 77 Cal.App.5th at pp. 542, 548 [holding defendant was not entitled to former section 1170.95 relief for attempted murder conviction because the jury "was not instructed" on natural and probable consequences doctrine]; see also *People v. Offley* (2020) 48 Cal.App.5th 588, 599 (*Offley*) ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the

8

jury could not have convicted the defendant on that basis, and the petition should be summarily denied"].)

Romero concedes that the court did not instruct the jury on the natural and probable consequences doctrine. Citing *People v. Langi* (2022) 73 Cal.App.5th 972, however, he contends that the jury could have convicted him of attempted murder as an aider and abettor on an imputed malice theory. In *Langi*, the court found that the record of the defendant's second degree murder conviction did not conclusively rule out the possibility that the jury found him guilty as an aider and abettor on an imputed malice theory. The court based its ruling on two jury instructions "of central significance" that were given at trial—CALJIC No. 8.31 on second degree murder and CALJIC No. 3.01 on aiding and abetting. (*Langi*, at p. 981.) The court concluded: "[T]he standard aiding-and-abetting instructions are ill suited to the crime of second degree murder. If, as here, a trial court uses such an instruction without tailoring it to the specifics of that crime, the instruction creates an ambiguity under which the jury may find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Id*. at p. 982.)

*Langi* is distinguishable for several reasons. First, Romero was not convicted of second degree murder; he was convicted of willful, deliberate, and premeditated attempted murder. The trial court did not give CALJIC No. 8.31 or any other jury instruction on second degree murder or implied malice. On the contrary, the court instructed the jury that attempted murder requires "express malice aforethought, namely, a specific intent to kill unlawfully another human being." Thus, *Langi* is not on point. (See *Coley*, *supra*, 77 Cal.App.5th at pp. 547-548 [holding *Langi* did not apply because

9

jury convicted defendant of attempted murder based on jury instructions requiring an intent to kill].)

Second, the jury verdict here affirmatively demonstrates that the jury must have found Romero was the actual shooter who acted with intent to kill, not an aider and abettor. The jury found true allegations that in the commission of the attempted murder, Romero personally used a firearm (§ 12022.5, subd. (a)(1)), intentionally and personally discharged a firearm causing great bodily injury (§12022.53, subd. (d)), and personally inflicted great bodily injury upon Courtney (§ 12022.7, subd. (a)). The jury also found that the attempted murder was willful, deliberate, and premeditated. Because there was no evidence of more than one shooter, the jury necessarily concluded that Romero was the actual killer who acted with intent to kill and personally inflicted the injury on Courtney.

Romero argues that the jury's findings on the enhancements do not establish that he personally acted with express malice or was the actual killer. We agree that the enhancement findings *alone* do not establish as a matter of law that Romero acted with malice aforethought. (*Offley*, *supra*, 48 Cal.App.5th at pp. 597-599.) But the attempted murder instructions also required the jury to find that the person who committed the act did so with express malice, i.e., a specific intent to kill. Because the jury's true findings on the enhancements establish that it must have found Romero was the one who personally committed the shooting and caused the injury to Courtney, the jury necessarily found that he acted with express malice by convicting him of attempted murder.

In sum, Romero is legally ineligible for relief under section 1172.6 because he was not convicted of murder on *any* theory, and he was not convicted of "attempted murder under the natural and probable consequences

10

doctrine." (§ 1172.6, subd. (a).) Appointment of counsel could not have altered the fact that Romero was legally ineligible for relief. In these circumstances, it is not reasonably probable that if an attorney had been appointed for Romero, the court would not have summarily denied his petition without an evidentiary hearing. (*Lewis*, *supra*, 11 Cal.5th at p. 974.) Accordingly, we find the trial court's error in failing to appoint counsel for Romero to be harmless.

## DISPOSITION

The order of November 4, 2021 denying Romero's petition under former Penal Code section 1170.95 is affirmed.


BUCHANAN, J.

WE CONCUR:



HUFFMAN, Acting P. J.



O'ROURKE, J.

11